**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| T.P., by and through his parent, | ) | |
| KIMBRELY R. | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO PUBLIC | ) | |
| SCHOOL DISTRICT 299, Local School | ) | |
| District; CHICAGO OFFICE OF THE | ) | |
| BOARD OF EDUCATION; and | ) | |
| ILLINOIS STATE BOARD OF | ) | |
| EDUCATION | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND ATTORNEYS' FEES**

NOW COME PLAINTIFFS T.P., by and through his parent, Kimbrely R., by their attorneys, EQUIP FOR EQUALITY ("EFE"), and as their Complaint for Injunctive Relief and Attorneys' Fees, state as follows:

**INTRODUCTION**

1. This cause of action arises from the efforts of Kimbrely R., parent of T.P., to enforce the right of her son to a free appropriate public education ("FAPE") in the least restrictive environment. This action is brought under 42 U.S.C. § 1983 to enforce implementation of the administrative decision issued by Impartial Hearing Officer Mary Onken ("IHO") on October 21, 2009, following a four day special education due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.* *See* Decision and Order, attached as **Exhibit A**.

2. The IHO rightly found that T.P., a student with autism, was denied a free appropriate public education ("FAPE") in violation of the IDEA because Chicago Public Schools

did not provide services and support to enable him to receive educational benefit in the least restrictive environment. To compensate for this denial of FAPE, the IHO ordered significant relief including compensatory educational services to put T.P. in the same position that he would have occupied had the school complied with the IDEA. Chicago Public Schools has failed to comply with the IHO's decision, over six months since the order was entered.

3.      Kimberly R., on her own behalf and on behalf of T.P., asks this Court to enjoin Defendants to comply with the IHO's decision, under IDEA and under 42 U.S.C. § 1983 for deprivation of rights secured by IDEA, as well as any available damages under 42 U.S.C. § 1983.

4.      Kimberly R. also brings this action to recover attorneys' fees as the prevailing party in the administrative proceeding.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over T.P.'s claims pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States); 28 U.S.C. § 1343(a)(3) (conferring jurisdiction over civil actions to redress the deprivation, under color of any state law of any right secured by any Act of Congress providing for equal rights of citizens); 42 U.S.C. §§ 1983-1988; IDEA, 20 U.S.C. §§ 1415(i)(2), 1415(i)(3)(A), or 1415(1).

6.      This court is the appropriate venue under 28 U.S.C. § 1391(b), in that the Defendants are subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in this district.

## PARTIES

7.      T.P. is an eight-year-old student who has autism.  His disability of autism affects his communication, socialization and academic performance in school.

8.     Kimbrely R. is the parent of T.P.  At all times pertinent, Kimbrely R. ("Parent") has been a legal resident of Chicago, Illinois and a taxpayer in Chicago Public Schools District 299.

9.     Defendant Board of Education of the City of Chicago (referred to herein as the "District," "Chicago Public Schools," "CPS," or the "Board of Education") is a body politic and corporation organized pursuant to the Illinois School Code and is situated in Chicago, Illinois. By federal and state law, District 299 is responsible for ensuring that students with disabilities residing within its District are provided with a FAPE.  20 U.S.C. § 1415(a); 105 ILCS § 5/14-1 *et seq.*

10.     Defendant Illinois State Board of Education ("ISBE") is the state educational agency authorized and required to oversee the provision of a FAPE by Illinois school districts and to enforce the decisions of IHOs.  23 Ill. Adm. Code § 226.675.

## APPLICABLE LAW

11.     The IDEA, formerly the Education of All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.*, was enacted to ensure that all children with disabilities in the United States are provided with a FAPE.  20 U.S.C. § 1414(d).

12.     A FAPE is defined in IDEA as special education and related services provided at public expense, under public supervision and direction, and without charge that is provided in conformity with the child's Individualized Education Program ("IEP").  20 U.S.C. § 1401(9); 34 CFR § 300.17, § 300.39.

13.     The IDEA requires that "to the maximum extent appropriate, children with disabilities are educated with children who are not disabled," and that the "removal of children with disabilities from the regular educational environment occurs only when the nature or

severity of the disability of the child is such that education in regular classes with the use of supplemental aids and services cannot be achieved satisfactorily." 20 U.S.C 1412 (a) (5)(A). *See also* 34 C.F.R. § 300.550.

14.     The IDEA and the Illinois School Code provide parents with a right to a due process hearing concerning any matter related to the identification, evaluation or educational placement of a child with a disability.  20 U.S.C. § 1415(f)(3); 105 ILCS § 5/14-8.02a.

15.     The impartial hearing officer must issue a written decision within ten days after the conclusion of the hearing.  105 ILCS § 5/14-8.02a; 23 Ill. Adm. Code § 226.670.

16.     The School District must either appeal the hearing officer's decision in a civil action or comply with the order.  105 ILCS § 5/14-8.02a(i); 23 Ill. Adm. Code § 226.675.

17.     The impartial hearing officer does not retain jurisdiction to enforce his or her ruling.  23 Ill. Adm. Code § 226.675.

18.     ISBE is required to monitor compliance by the parties with the terms of the IHO decision.  23 Ill. Adm. Code § 226.675.

19.     The School District must comply with the hearing officer's decision or it may be found liable for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. §1983; *see also Reid v. Bd. of Educ., Lincolnshire-Prairie View Sch. Dist.*, 765 F. Supp. 965, 969 (N.D. Ill. 1991) (stating that parents may use § 1983 to enforce a due process hearing order).

20.     If parents are the prevailing party in a due process hearing, they are entitled to reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B).

21.     Attorney fees may be awarded for an attorney's attendance at an IEP meeting if the meeting was convened as a result of an administrative proceeding.    34 CFR § 300.517(c)(2)(ii).

**FACTS**

22.     As a child with autism, T.P. became eligible for special education and related services as a student in Chicago Public Schools at the age of three. His Individualized Education Program ("IEP") was to address his deficits in communication, socialization, and academic performance and he was placed at Kilmer Elementary School in a classroom with only students with disabilities.  *See* **Exhibit A.**

23.     After T.P. endured three years of instruction in his segregated classroom that provided him with very little, if any, educational benefit, Kimbrely R. placed him in a first grade classroom at Passages Charter School, an elementary school in Chicago Public Schools.   In addition to instruction with typically-developing first grade students, T.P. was to receive special education instruction on academic goals, speech-language therapy, and occupational therapy. Kimbrely R. met with the principal of the school and was assured that the school could provide the instruction and support that T.P. needed as a student with autism.  *See* **Exhibit A.**

24.     Shortly after T.P. started the first grade year, he began to have difficulty attending to tasks in the first grade classroom or participating fully with his peers. As an active parent in close communication with T.P.'s teacher, Kimbrely R. expressed her concerns about T.P.'s adjustment to the new school and made suggestions to his teacher. She also requested that his IEP team meet to address the difficulties that he was having in the classroom. His IEP team met and made two revisions to his IEP: he was to receive a one-on-one aide and breaks to address his sensory needs.  *See* **Exhibit A.**

25.     A mere twenty-one days after T.P. received the support of his one-on-one aide, his IEP team met again and, against the express recommendations of his parent, decided to move T.P. to a segregated autism self-contained classroom. Kimbrely R. objected to this placement change because she did not believe that the teachers at Passages had implemented T.P.'s IEP correctly, had provided support and services to address T.P.'s needs, and had given T.P. the instruction that he needed. She feared that the segregated classroom would cause T.P. to regress in his age-appropriate communication, social skills, and behavior. She had seen the effect of a segregated classroom, at Kilmer Elementary School, on T.P. and did not believe that he could get benefit from the suggested segregated self-contained placement. *See* **Exhibit A.**

26.     Due to her strong concerns, Kimbrely R. requested a due process hearing, pursuant to the IDEA and the Illinois School Code, in December 2008. *See* Due Process Hearing Request, attached as **Exhibit B.**

27.     The request for hearing was filed for the following reasons:

a.   the District's failure to provide the special educational services listed on T.P.'s IEP;

b.   the District's failure to provide a full-time, trained one-on-one paraprofessional;

c.   the District's failure to consistently provide a one-on-one paraprofessional;

d.   the District's failure to provide appropriate visual accommodations and modifications;

e.   the District's failure to develop appropriate IEP goals to address T.P.'s behavioral problems;

f.   the District's failure to develop any behavior intervention plan for T.P.;

g.   the District's failure to provide appropriate and intensive services to allow him to progress academically;

    h.   the District's failure to include appropriate modifications and accommodations;

    i.   the District's failure to provide staff training; and,

    j.   the District's violation of the requirement for education in the least restrictive environment.

28.    The relief sought through the hearing request was as follows:

    a.   hold an IEP meeting to write appropriate special educational goals, modifications and accommodations including the recommendations of Dr. Valerie Owen;

    b.   not to change T.P.'s placement to a self-contained autism classroom;

    c.   allow T.P. to remain at Passages Charter School as his least restrictive environment placement;

    d.   provide T.P. with a trained one-on-one paraprofessional in Passages Charter School;

    e.   pay for T.P.'s teachers and paraprofessionals at Passages Charter School to attend training for the instruction of children with autism, including training to address communication, sensory and socialization needs, and include training for any new staff hired;

    f.   provide an autism itinerant to consult with T.P.'s teachers and paraprofessionals 30 minutes per week regarding T.P.'s inclusion at Passages Charter School;

    g.   hire a behavioral consultant with expertise with children with autism with sensory processing needs to observe T.P. and assist with writing an appropriate behavioral intervention plan;

    h.   write an appropriate behavioral intervention plan;

    i.   pay for compensatory services beyond the regular school day for T.P.'s deficit areas, sixty minutes per week for each deficit area, for the time this Hearing Officer finds that CPS has denied T.P. a FAPE; and,

    j.   pay for any other compensatory education deemed appropriate by this Hearing Officer, including transportation to and from the compensatory education services.

29.    After a lengthy period of negotiation, an administrative due process hearing was held on September 21 - 24, 2009.

30.    The hearing officer issued a decision on October 21, 2009, in which she held that Chicago Public Schools had denied T.P. a FAPE and violated the least restrictive environment by changing his placement to an autism self-contained classroom.  The IHO granted Kimbrely R. all of her requested relief, except for her request for a behavioral consultant. *See* **Exhibit A**. The IHO ordered Chicago Public Schools to pay for a speech-language evaluation, occupational therapy evaluation, and assistive technology evaluation. In addition, the IHO ordered CPS to pay for one hour each week of compensatory speech-language therapy and occupational therapy, including transportation to and from these weekly therapies.

31.    Chicago Public Schools did not appeal the IHO's decision.

32.    On November 12, 2009, the District held an IEP meeting to implement the IHO's Order.  At the meeting, the District's attorney stated that the District would provide funding for an independent speech-language evaluation, occupational therapy evaluation, and assistive technology evaluation.  *See* Letters from District to ISBE, attached at **Exhibit C.**

33.    Despite its clear obligation under the terms of the Order, the District did not take any steps to find independent providers to fulfill the terms of the Order. At the November 12, 2009 IEP meeting, the District's attorney stated that he would provide Kimbrely R. a list of independent providers who were already approved as District vendors. However, he did not respond to requests made by the Parent's counsel for such a list. *See* Email Correspondence between Hermann and Wakelin, attached at **Exhibit D.**

34.    Believing it to be the only way for T.P. to get the evaluation and services to which he is entitled, Kimbrely R. voluntarily researched and contacted independent providers. *See*

Affidavit of Kimbrely R., attached at **Exhibit E.** The District did not provide her any list of independent providers or assist her in any way to find independent providers that could fulfill the terms of the Order. Consequently, Kimbrely R. undertook the duties of the District and researched independent providers, conducted provider interviews, and toured clinical facilities to determine appropriate providers to fulfill the terms of the Order. She contacted at least six speech therapy clinics and six occupational therapy clinics to determine if any were appropriate for T.P.

35. The majority of the independent providers that Kimbrely R. contacted were not willing to accept payment from the District or were not appropriate to fulfill the terms of the Order. They expressed concern that the payment process would be slow and that they would not get payment. Amy Zier & Associates, an occupational therapy clinic, and All Bright Therapies, a speech language therapy clinic, were the only clinics that agreed to bill the District and complete the required vendor application. *See* **Exhibit E.**

36. On December 9, 2009, the District held an IEP meeting as required by the Order to discuss, among other items, the independent evaluations. Because the District had not approved Kimbrely R.'s suggested providers, the evaluations had not occurred. *See* **Exhibit C.**

37. On December 7, 2009, Kimbrely R. informed the District that Amy Zier & Associates would be willing to conduct the occupational therapy evaluation for T.P. and provide the weekly occupational therapy. She also informed the District that All Bright Therapies was willing to conduct a speech-language evaluation and provide the weekly speech therapy. Importantly, Kimbrely R. also informed the District that both independent providers were willing to accept payment from the District, rather than directly from Kimbrely R. *See* Emails to District, attached at **Exhibit F.**

38.     On January 6, 2010, after Parent's counsel made several requests for a response, the District notified Kimbrely R. that it did not object to Amy Zier & Associates conducting T.P.'s occupational therapy evaluation and providing the weekly compensatory services required by the Order. *See* Emails to Parent about Providers, attached at **Exhibit G**. The District provided Kimbrely R. with the vendor application that it requires providers to complete for payment.

39.     On January 7, 2010, the District notified Kimbrely R. that it would not object to All Bright Therapies conducting T.P.'s speech-language evaluation and providing the weekly speech therapy required by the Order. *See* **Exhibit G**.

## CPS Has Failed to Pay Amy Zier & Associates

40.     Because the District represented that a "vendor number" is required to obtain payment, Amy Zier & Associates completed and sent the Board of Education a supplier vendor application on January 22, 2010. The vendor application was twelve pages long. *See* Amy Zier Vendor Application, attached at **Exhibit H**.

41.     On February 3, 2010, Amy Zier & Associates conducted the first day of the occupational therapy evaluation. It completed the evaluation on February 10 and then began weekly occupational therapy sessions in accordance with the Order. The business assigned Katherine Flentge to complete the occupational therapy services. Ms. Flentge's affidavit is attached as **Exhibit I,** which describes her experience, the services that she has provided, and the hardship that she has endured.

42.     Ms. Flentge designed T.P.'s weekly occupational therapy to consist of holistic activities to address his sensory integration and awareness, in order to increase his ability to focus in school and participate in the first grade classroom. *See* **Exhibit I.** The IHO found T.P.'s

sensory deficits were significant and stated that the District did not provide substantial specialized instruction nor related services to address this deficit. She ordered compensatory occupational therapy to address the District's failure to address his sensory deficits. *See* **Exhibit A.**

43.     In February, the District notified Amy Zier & Associates that it needed to submit additional information including a business certificate, certificate of insurance, and articles of incorporation. Amy Zier & Associates provided this information to the District and did not receive any other notification regarding its status as a vendor. *See* Email to Olga Pribyl, attached at **Exhibit J.**

44.     Amy Zier & Associates submitted invoices for services rendered under the terms of the Order on February 15, February 26, March 12, and March 26. These invoices totaled $1440.00 in unpaid fees for the independent evaluation and six weeks of occupational therapy. *See* Amy Zier & Associates Invoices, attached at **Exhibit K.**

45.     Amy Zier & Associates has not received payment from the District for the occupational therapy evaluation or the weekly occupational therapy provided under the terms of the Order. *See* **Exhibit I.**

46.     On March 11, 2010, Amy Zier sent a letter to the District notifying them that if she did not receive payment for the services rendered for the month of February by March 19, 2010, T.P.'s occupational therapy services would be put on hold. *See* Letter to the District, attached at **Exhibit L**.

47.     Ms. Zier did not receive any response from the District regarding this letter.

48.     On March 18, 2010, the District sent Amy Zier & Associates a request that Ms.

Flentge receive a fingerprint-based background check to obtain a vendor number. *See* Letter to Amy Zier, attached at **Exhibit M**. Ms. Flentge completed this background check and sent the results to the District on March 29, 2010. *See* Email to Hermann, attached at **Exhibit N**.

49.      On April 8, 2010, the District sent Amy Zier & Associates a letter requesting that Ms. Flentge obtain a fingerprint-based background check. *See* **Exhibit M**. Helen Escober at Amy Zier & Associates referred them to the documentation that she had already provided to the District. *See* **Exhibit N**. Neither Ms. Escobar, Ms. Flentge nor Ms. Zier has received any response from the District about additional issues with the vendor application or any basis for why payment has not been made.

50.      As of March 19, 2010, Amy Zier & Associates has suspended providing T.P. the occupational therapy required by the IHO's Order because they have not received payment for the services rendered. *See* **Exhibit I**.

51.      Loss of this educational program ordered by the IHO already has caused T.P. to suffer significant hardship. T.P. desperately needs compensatory occupational therapy in order to address his deficits as a child with autism. Although he currently receives therapy within the school environment, those goals are lacking in global self- regulation needs, and addressing community and self care needs. *See* **Exhibit I**. In addition, his school team needs to consult with Ms. Flentge, a specialist with sensory integration disorders, in order to support T.P.'s participation in the first grade classroom and provide him with self-care skills, interactive skills, and self-regulatory skills. *See* **Exhibit I**. With each week that T.P. does not receive this critical therapy, his sensory deficits grow and he is put at great risk of not having the skills necessary to participate in class with his first grade peers.

52.      Failure to receive payment is a financial hardship to Ms. Flentge and Amy Zier &

Associates. Ms. Flentge is currently working two jobs to support her family, as her husband is recently unemployed. Without payment for the services she has rendered, she is not able to provide for her family. *See* **Exhibit I.**

### CPS Has Failed to Pay All Bright Therapies

53.     Because the District represented that a õvendor numberö is required to obtain payment, Amanda Albright, owner of All Bright Therapies, completed and sent the Board of Education a supplier vendor application on January 13, 2010.  The vendor application was seventeen pages long.  *See* All Bright Therapies Vendor Application, attached at **Exhibit O**.

54.     On February 16, 2010, Ms. Albright completed her initial evaluation of  T.P.  Finding that T.P.øs auditory comprehension is equivalent to a typically-developing three-year old and his expressive communication equivalent to a two-year old, Ms. Albright recommended that T.P. receive a minimum of two hours of speech therapy during one-on-one weekly sessions to address his severe delays in receptive and expressive communication.  According to the IHOøs Order, she began to provide him speech language instruction for sixty minutes each week.  Ms. Albrightøs affidavit is attached as **Exhibit P,** which describes her experience, the services that she has provided to T.P., and the hardship that she has endured.

55.     All Bright Therapies submitted invoices for services rendered under the terms of the Order on February 17, February 28, March 11, March 18, and April 9. These invoices totaled $781.00 in unpaid fees for the independent evaluation and speech-language therapy. *See* All Bright Therapy Invoices, attached at **Exhibit Q.**

56.     On or around February 19, the District notified Amanda Albright at All Bright

Therapies that it needed to submit additional information including a business certificate, certificate of insurance, and articles of incorporation. Ms. Albright provided this information to the District on February 21, 2010 and did not receive any other notification regarding its status as a vendor. Ms. Albright did receive an email on March 10, 2010 notifying her that she needed to be fingerprinted. *See* **Exhibit P**. She completed the necessary fingerprinting, submitted the results and received confirmation from the District that the background check was complete on March 24, 2010. *See* Correspondence with Albright, attached at **Exhibit R.**

57.     On April 8, 2010 the District sent Ms. Albright a letter notifying her that she needed to complete a fingerprint-based background check. *See* **Exhibit R.** Ms. Albright directed the District back to the confirmation that she had already received from the District about the background check being complete. The District replied that Ms. Albright's vendor number would be issued on April 12, 2010. *See* Email to Wakelin, attached at **Exhibit S**.

58.     Despite having completed all of the steps for the vendor application and receiving a vendor number, All Bright Therapies still has not received any payment from the District. 46. *See* **Exhibit P**.

59.     Loss of this educational program ordered by the IHO will cause T.P. to suffer greatly. T.P. critically needs compensatory speech language therapy to remediate for the great amount of time that the District failed to provide T.P. the instruction that he needed to gain communication skills. Although T.P. has made great strides in communication since receiving the weekly therapy from Ms. Albright, his extreme communication deficits remain staggeringly far behind his peers. If this weekly therapy were interrupted, T.P. would experience an immediate and detrimental loss of skills. *See* **Exhibit P.**

60.     Failure to receive payment is a financial hardship to All Bright Therapies as it is a

14

small business that survives on prompt payment for services rendered. All Bright Therapies cannot continue to provide T.P.øs weekly therapy as required by the Order if it does not receive payment. *See* **Exhibit P.**

### CPS Has Failed to Pay for the Transportation Costs for the Compensatory Education Services

61. According to the IHOøs Order, the District öshall pay for transportation costs associated with providing [compensatory services].ö *See* **Exhibit A**. The District has not paid for transportation costs or contacted Kimbrely R. to inform her about the method that she should transport T.P. to the weekly compensatory services. *See* **Exhibit E.**

62. Because Kimbrely R. does not have a car, she provided three options to the District for transporting T.P. to the weekly therapies: arrange for a bus or some type of CPS transportation to take him to his after school OT and Speech twice a week and return him to his home; reimburse her for cab fare from T.P.øs school to the therapies and back to their home; or, reimburse her for joining a car share program like Zip Car. *See* Email to Hermann, attached at **Exhibit T.** The District did not inform Kimbrely R. about which option it would approve for reimbursement but suggested that cab fare might work best. *See* Email to Wakelin, attached at **Exhibit U**.

63. As her only income is $675 per month from the Social Security Administration, Kimbrely R. is unable to pay for taxi cabs to and from the weekly therapies without reimbursement. *See* **Exhibit E.** The cost for a one-way trip via taxi cab to Amy Zier & Associates is twenty dollars. The cost for a one-way trip via taxi cab to All Bright Therapies is twenty-six dollars. *See* **Exhibit E.**

64. Due to the high cost of taxi cabs and the Districtøs failure to reimburse her, for the

majority of the weeks, Kimbrely R. has taken public transportation to the clinics for the weekly therapies. This is a long process that requires multiple buses and trains. To get to Amy Zier & Associates, she must pick up T.P. at school and take two buses to the clinic. To return to their home, she must take two buses and a train. To get to All Bright Therapies, Kimbrely R. must take one bus to the clinic and then two buses and a train to get back to their home. Because this trip on public transportation is extremely long and difficult with any child, let alone a child with autism, she has taken taxis from Amy Zier & Associates on three occasions and from All Bright Therapies on two occasions. *See* **Exhibit E.**

65.     The District has not reimbursed Kimbrely R. for the transportation that she has provided. *See* **Exhibit E.**

66.     Kimbrely R. has no assets that she can access to meet the cost of private occupational therapy, speech language therapy, and transportation to these therapies, even temporarily.

67.     As a result of her extremely limited income, it is a hardship for Kimbrely R. not to receive reimbursement or assistance for T.P.'s transportation to the weekly therapy sessions that the Hearing Officer ordered the District to provide.

### The Illinois State Board of Education Has Not Enforced Compliance with the Hearing Officer's Order

68.     The IHO's Order required the District to provide proof of compliance to the Illinois State Board of Education ("ISBE") within fifteen days of its receipt of the decision, which was issued on October 21, 2009. *See* **Exhibit A.**

69.     On December 7, 2009 and December 20, 2009, the District submitted to ISBE accounts of compliance with the IHO's Order which neglected to document its failure to provide a trained one-on-one aide, an autism itinerant, independent speech-language evaluation,

occupational therapy evaluation, assistive technology evaluation and compensatory education services. *See* **Exhibit C.** ISBE responded requesting additional documentation of compliance regarding the one-on-one aide and the autism itinerant. *See* ISBE Response to District, attached at **Exhibit V.**

70. Parent's counsel has repeatedly inquired of the District about the status of the vendor applications and failure to comply with the IHO's Order. Due to the District's failure to provide an adequate response to these inquiries, Parent's counsel sought assistance from ISBE, the body charged with enforcing compliance.

71. On December 18, 2009, Parent's counsel provided a detailed account of the District's failure to comply with each of the components of relief in the IHO's Order that had been issued on October 21, 2009. *See* Letter to ISBE, attached at **Exhibit W.** Based on the concerns expressed by Parent's counsel and the District's failure to document compliance with the IHO's Order, ISBE requested additional documentation to be provided by the District by February 3, 2010, regarding its compliance. The correspondence between ISBE and the District is attached at **Exhibit X.**

72. The District did not submit additional documentation on February 3, 2010 and, in response, Parent's counsel notified ISBE once again of the significant issues with the District's failure to comply. *See* Email to ISBE, attached at **Exhibit Y.** ISBE contacted Parent's counsel to discuss the issues and stated that it would initiate discussions with the District to ensure compliance. However, the District did not process the vendor applications nor provide payment for the evaluations or compensatory education services provided to T.P. *See* **Exhibits I** and **P** (detailing the District's failure to pay Amy Zier & Associates and All Bright Therapies).

73. Based on the District's continued failure to comply with the IHO's Order and the

impending loss of compensatory occupational therapy services, Parent's counsel sent an email to the District and ISBE requesting immediate action on March 16, 2010. *See* Email to District, attached at **Exhibit Z.**

74. Neither the District nor ISBE took action as a result of this email and T.P.'s occupational therapy services abruptly ended and, as a result, his loss of critical skills began.

75. The District submitted additional documentation to ISBE regarding compliance on April 6, 2010, which again neglected to note the District's significant payment problem and the resulting loss of occupational therapy services in violation of the IHO's Order. Furthermore, it failed to acknowledge that T.P.'s critical speech-language therapy services were at risk of halting due to the District's failure to pay the provider. *See* Letter to ISBE, attached at **Exhibit AA.** Parent's counsel responded to this submission to highlight the gravity of the payment problem and the District's resulting lack of compliance with the IHO's Order. Parent's counsel asked for ISBE to enforce the IHO's Order. *See* Correspondence to ISBE, attached at **Exhibit BB.** ISBE responded that it would keep this information in mind as they "work toward a satisfactory resolution of this matter." *See* **Exhibit BB.**

76. Importantly, All Bright Therapies and Amy Zier & Associates still have not received any payment for the evaluations they completed and services they have provided. As a result, T.P. is not receiving the occupational therapy required by the IHO's Order and is at grave risk of losing the speech-language therapy required by the Order. Neither the District nor ISBE has provided any explanation for the failure to implement and enforce the IHO's order from six months earlier, namely to require payment for ordered evaluations, therapies and transportation.

## COUNT I
## COMPLAINT FOR PERMANENT INJUNCTION FOR DEPRIVATION OF
## FEDERAL RIGHTS SECURED BY IDEA IN VIOLATION OF SECTION 1983

77.     Plaintiffs repeat and reallege paragraphs 1 through 76 herein by reference.

78.     The IHO had jurisdiction to hear the parties' dispute and to grant the relief ordered.  105 ILCS § 5/14-8.02a.

79.     The IHO ordered the District to pay for speech and occupational therapy evaluations and weekly speech and occupational therapy services as compensatory education for the District's failure to provide a FAPE.

80.     The District failed to identify appropriate evaluators and therapists in compliance with the IHO Order.

81.     Once the District agreed upon the evaluators and therapists identified by Kimbrely R., the District has failed to fund the ordered evaluations and therapies.

82.     ISBE has a duty to enforce the Order and ensure that the ordered program is paid for by the District, but ISBE has not carried out its enforcement duty.

83.     Due to the District's failure to provide payment, Amy Zier & Associates has ceased providing the occupational therapy to T.P. required by the Order. Without prompt payment, All Bright Therapies will cease providing speech therapy to T.P.

84.     In her Order, the IHO determined that the District had denied T.P. a FAPE and ordered occupational therapy and speech therapy, including transportation costs, to compensate for this denial.  Continued loss of these vital therapies has already caused irreparable injury to T.P., as he will be without educational therapy and will regress behaviorally, functionally, and academically.

85.     The Parent is likely to succeed on the merits of their case.  T.P. was awarded

independent evaluations, compensatory occupational therapy, and compensatory speech therapy. The District did not appeal this decision.

86. Defendants acted under color of law in depriving T.P. and Kimbrely R. of their federal rights.

87. All the hardships in this case fall upon T.P. and his parent. T.P. requires the relief ordered by the IHO. His parent is unable to pay for the therapies. The District is financially responsible to pay for T.P.'s education pursuant to federal and state law. The District denied T.P. a FAPE.

88. The public interest is served by requiring public school districts to comply with IHO decisions and to comply with IEPs. The public interest is served when a student with a disability receives a FAPE and gains education towards functional independence in adulthood.

89. Plaintiffs have exhausted attempts at enforcement through the Board of Education and ISBE, and have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that this Court:

A. Enjoin the District to pay Amy Zier & Associates for the independent evaluation, fingerprint testing, therapy completed, and ongoing therapy for the remainder of the time covered by the IHO's Order;

B. Enjoin the District to pay All Bright Therapies for the independent evaluation, fingerprint testing, therapy completed, and ongoing therapy for the remainder of the time covered by the IHO's Order;

C. Order that the District reimburse Plaintiffs for any and all payments they have made for transportation that should have been made by the District pursuant to the IHO's Order;

D. Enjoin the District to provide the IHO ordered compensatory therapies;

E. Enjoin the District to provide the IHO ordered transportation services to the compensatory therapies;

F. Enjoin ISBE to enforce the IHO order immediately;

G. Award Plaintiffs compensatory education and services for the time missed to date;

H. Award reimbursement against the District and/or ISBE for Plaintiffs' fees and costs incurred in bringing this action to enforce the IHO's decision; and,

I. Grant such other relief as this Court deems just and proper.

## COUNT II
## COMPLAINT FOR ATTORNEY FEES UNDER IDEA

90. Plaintiffs repeat and reallege paragraphs 1 through 76 herein by reference.

91. Plaintiffs proved that the District denied T.P. a FAPE in the LRE and obtained substantially all of the relief sought in their hearing request and additional relief deemed appropriate by the IHO.

92. By virtue of obtaining such relief, the Plaintiffs are the prevailing party in this matter.

93. As the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B).

94.     The School District unreasonably protracted this litigation by failing to convene a timely resolution session, by failing to provide requested records, by denying qualified professionals access to observe T.P., and by failing to timely, or at all, pay for ordered services.

95.     The Plaintiffs' attorneys' fees and costs are reasonable and are consistent with the rates prevailing for the kind and quality of services furnished.  Declarations outlining Plaintiffs' counsels' experience are attached as **Exhibits CC**.  Affidavits concerning the reasonableness of Plaintiffs' counsels' rates from area attorneys who practice special education law are attached as **Exhibits DD**.

96.     There are no special circumstances that would render the award of Plaintiffs' full request unjust, nor are the fees requested excessive.

97.     Plaintiffs have incurred at least $121,701.93, in legal fees and costs up to January 6, 2010, in prosecuting this matter, which do not include the fees and costs that will be sought for those incurred after January 6, 2010, including fees for bringing this Complaint. Plaintiffs' attorneys have exercised billing judgment and no-charged time of all law clerks as well as legal fees for Debra Wysong and Rachel Shapiro.  Plaintiffs request payment of $114,541.93 in legal fees and expenses incurred through January 6, 2010 and reserve the right to request additional fees and costs for charges incurred after January 6, 2010.  A detailed bill is attached as **Exhibit EE**.

98.     On January 29, 2010, Plaintiffs sent a demand for attorneys' fees to the District, but have not received a response from the District.  Plaintiff's counsel has requested a response from the District on multiple occasions in the last three months, but has not received any response, other than the request that we not file a complaint or that the Board of Education will discuss this at a later date.

WHEREFORE, Kimbrely R. prays that this Court:

1)  Find that Plaintiffs were the prevailing party in the administrative proceeding against the District;

2)  Award reimbursement against the District to Plaintiffs for all attorneys' fees and costs incurred up through the due process hearing and subsequent IEP meetings held pursuant to the IHO's Order;

3)  Award reimbursement against the District and/or ISBE for Plaintiffs' fees and costs incurred in bringing this action to enforce the IHO's decision; and

4)  Grant any other relief this Court deems just.

Respectfully submitted,

/s/   Olga Pribyl_____
One of the Attorneys for Plaintiff

DATED: April 27, 2010

Olga Pribyl, Bar No. 6190672
Margaret Wakelin, Bar No. 6297871
EQUIP FOR EQUALITY, INC.
20 North Michigan, Suite 300
Chicago, IL 60602
(312) 341-0022

<u>**CERTIFICATE OF SERVICE**</u>

       I, OLGA F. PRIBYL, the attorney, hereby certify that on this **27th day of April, 2010,** a copy of the foregoing **Complaint for Injunctive Relief and Attorneys' Fees** was file electronically with the Clerk of the Court using the CM/ECF system which will send notification to the following:

             Patrick Rocks
             General Counsel
             BOARD OF EDUCATION OF THE CITY OF CHICAGO
             125 South Clark Street, Suite 700
             Chicago, IL  60603
             procks@cps.k12.il.us

             Darren Reisberg
             General Counsel
             ILLINOIS STATE BOARD OF EDUCATION
             100 West Randolph, Suite 14-300
             Chicago IL  60601
             dreisber@isbe.net

                       /s/  Olga Pribyl         
                         Olga F. Pribyl