IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| T.P., by and through his parent, | ) | |
| KIMBRELY R. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 2604 |
| | ) | |
| CITY OF CHICAGO PUBLIC SCHOOL | ) | |
| DISTRICT 299, Local School District; | ) | |
| CHICAGO OFFICE OF THE BOARD OF | ) | |
| EDUCATION; and ILLINOIS STATE | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 27, 2010, plaintiff T.P. ("Plaintiff"), by and through his parent, Kimbrely R.,

filed a complaint under 42 U.S.C. § 1983 against defendants City of Chicago Public School

District 299 ("School District"), the Chicago Office of the Board of Education (the "Board"),

and the Illinois State Board of Education (the "ISBE"), seeking to enforce an administrative

decision issued by Impartial Hearing Officer Mary Onken ("IHO") on October 21, 2009,

following a four-day special education due process hearing pursuant to the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.* (Dkt. No. 1 ("Compl.") ¶ 1.)

Plaintiff also sought attorneys fees pursuant to 20 U.S.C. § 1415(i)(3)(B), as the prevailing party

in the administrative proceeding. (*Id.* ¶ 4, 20.)

On June 29, 2010, counsel for the Board[1] and counsel for Plaintiff reported that they had settled Plaintiff's claims for injunctive relief.[2] Approximately two months later, on August 26, 2010, counsel reported that the Board had paid Plaintiff $85,979.75 in partial settlement of Plaintiff's claim for attorneys' fees. The parties have been unable to reach a settlement regarding the remaining attorneys' fees requested by Plaintiff. Now pending before the court is Plaintiff's "Motion for Summary Judgment" (Dkt. No. 26), seeking an additional $53,065.25 in attorneys' fees, prejudgment interest from the date of the IHO's October 21, 2009 order, and additional fees for counsel's prosecution of the pending motion. For the reasons set forth below, Plaintiff's motion for summary judgment is granted and judgment is entered in favor of Plaintiff on his claim for attorneys' fees. Attorneys' fees are awarded to Plaintiff in the amount of $35,442.75; prejudgment interest is awarded on this $35,442.75 in attorneys' fees for the time period beginning October 21, 2009 and ending March 29, 2011; and prejudgment interest is awarded on the previously-paid $85,979.75 in attorneys' fees for the time period beginning

---

[1] The parties do not distinguish between the School District and the Board for purposes of the pending motion, although only the Board has responded to Plaintiff's motion. Defendant ISBE has not filed an appearance in this lawsuit.

[2] In its response brief, the Board argues that Plaintiff's § 1983 claim should be dismissed because Plaintiff "make[s] no mention of this claim in [his] motion for summary judgment." (Dkt. No. 29 ("Bd.'s Resp.") at 3.) Plaintiff does, however, "mention" this claim, stating that "[o]n June 29, 2010, counsel[ ] for Plaintiff and Defendants reported that they had settled the issues remaining in the complaint for injunctive relief." (Dkt. No. 26-19 ("Pl.'s Mem") at 4.) On the other hand, Plaintiff agrees with the Board that "[t]he only remaining issue before this court is Plaintiff's petition for attorneys' fees." (*Id.* at 5; *see also* Dkt. No. 30 ("Pl.'s Reply") at 4.) In light of the parties' agreement regarding the remaining issue in this case, and Plaintiff's failure to articulate any reason why Plaintiff's § 1983 claim should not be dismissed at this point in the litigation, Plaintiff's "Motion for Temporary Restraining Order and Preliminary Injunction" (Dkt. No. 6) is denied as moot and Plaintiff's § 1983 claim is dismissed with prejudice.

October 21, 2009 and ending September 9, 2010.


<u>BACKGROUND</u>

Plaintiff is an eight-year-old student who has autism.  (Dkt. No. 26-2 ("Pl.'s SMF") ¶ 1.) Plaintiff's school district of residence is the School District, and the Board is the relevant "local educational agency" as defined by 20 U.S.C. § 1401(19).  (*Id.* ¶¶ 1, 3 (erroneously citing 20 U.S.C. § 1402(15)).)

In September 2008, Plaintiff enrolled as a first grade student at Passages Charter School. (*Id.* ¶ 7.)  On December 15, 2008, Plaintiff's mother, Kimbrely R., requested an impartial due process hearing from the ISBE, alleging that the School District had denied Plaintiff a free appropriate public education ("FAPE") in the least restrictive environment.  (*Id.* ¶ 11; *see also* Pl.'s Ex. C ("10/21/2009 Order") at 4.)  Plaintiff requested that the IHO order the School District to: (1) hold an individualized education program ("IEP") meeting to write appropriate special educational goals, modifications, and accommodations; (2) not change Plaintiff's placement to a self-contained autism classroom; (3) provide Plaintiff with a trained one-on-one paraprofessional at Passages Charter School; (4) pay for student's teachers and paraprofessionals at Passages Charter School to attend training for the instruction of children with autism and include training for any new staff hired; (5) provide autism itinerant to consult with student's teachers and paraprofessionals 30 minutes per week regarding student's inclusion at Passages Charter School; (6) hire a behavioral consultant with expertise with children with autism to observe Plaintiff and assist with writing an appropriate behavioral intervention plan; (7) write an appropriate behavioral intervention plan; (8) pay for compensatory services beyond the regular school day

for each of student's deficit areas, sixty minutes per week for each deficit area, for the time the IHO finds that the School District has denied Plaintiff a FAPE; (9) pay for any other compensatory education deemed appropriate by the IHO, including transportation to and from the compensatory education services; and (10) any additional relief deemed appropriate by the IHO.  (Pl.'s SMF ¶ 12; *see also* 10/21/2009 Order 5.)

After a four-day due process hearing from September 21, 2009, through September 24, 2009, the IHO issued a decision on October 21, 2009, holding that the School District had denied Plaintiff a FAPE and that the School District's proposed placement of Plaintiff in an autism instructional classroom violated the least restrictive environment mandate.  (Pl.'s SMF ¶¶ 13-14; Dkt. No. 23 ("Bd.'s Ans.") ¶ 30; 10/21/2009 Order 18, 21.)  With the exception of Plaintiff's request for a behavioral consultant, the IHO granted Plaintiff's request for relief in its entirety. Relevant to the pending motion, the IHO specifically ordered that the Board was to provide compensatory services in the form of 60 minutes per week for one year of occupational therapy and 60 minutes per week for one year of speech therapy, and that the Board was to pay the transportation costs associated with providing such services.  (Pl.'s SMF ¶ 14; Bd.'s Ans. ¶ 30; 10/21/2009 Order 22-23.)  The IHO also ordered that Plaintiff was to be evaluated by an audiologist, a speech and language therapist, and an occupational therapist at the Board's expense.   (Pl.'s SMF ¶ 14; Bd.'s Ans. ¶ 30; 10/21/2009 Order 22-23.)

The IHO gave the School District fifteen days from the School District's receipt of the October 21, 2009 order to provide the ISBE with proof of the School District's compliance. (Pl.'s SMF ¶ 15.)  On December 7, 2009, Plaintiff's mother informed the School District that Amy Zier & Associates would be willing to conduct the occupational therapy evaluation for

Plaintiff and to provide Plaintiff with weekly occupational therapy. (*Id.* ¶ 19.) The School District did not object to Amy Zier & Associates providing these services; however, as of April 23, 2010, the School District had not paid Amy Zier & Associates for either the initial evaluation or for any weekly occupational therapy provided to Plaintiff beginning in February 2009. (*Id.* ¶¶ 21, 26, 31.) As a result of the School District's failure to pay Amy Zier & Associates, Plaintiff's occupational therapy was suspended on March 19, 2010. (*Id.* ¶¶ 28, 30.) Similarly, on December 7, 2009, Plaintiff's mother informed the School District that All Bright Therapies would be willing to conduct the speech-language evaluation for Plaintiff and to provide Plaintiff with weekly speech therapy. (*Id.* ¶ 19.) The School District did not object to All Bright Therapies providing these services; however, as of April 24, 2010, the School District had not paid All Bright Therapies for either the initial evaluation or for any weekly speech therapy provided to Plaintiff beginning in February 2009. (*Id.* ¶¶ 22, 27, 32.) As of April 23, 2010, the School District also had not paid Plaintiff's mother for transportation costs. (*Id.* ¶ 34.)

Plaintiff's complaint was filed on April 27, 2010. (Dkt. No. 1.) The following day, on April 28, 2010, Plaintiff filed a motion seeking a temporary restraining order and preliminary injunction. (Dkt. No. 6.) At status hearings held on April 29, May 6, May 13, and May 27, 2010, the parties reported that they were in the process of negotiating a settlement regarding Plaintiff's claim for injunctive relief. (*See* Dkt. Nos. 9, 10, 11, 13.) On May 4 and May 10, 2010, the Board paid Amy Zier & Associates the money due on its outstanding February and March 2010 invoices. (Dkt. No. 28 ("Bd.'s SMF") ¶ 1.) On May 4, May 10, and May 11, 2010, the Board paid All Bright Therapies the money due on its outstanding February, March, and April 2010 invoices. (*Id.* ¶ 2.) On May 12, June 3, and June 16, 2010, the Board paid Plaintiff's

mother, Kimbrely R., for her travel expenses with respect to these services.  (*Id.* ¶ 3.)  On June

29, 2010, counsel for the Board and counsel for Plaintiff reported that they had settled Plaintiff's

claims for injunctive relief.  As discussed above, the parties are in agreement that "the only

remaining dispute in the litigation is the appropriate fee award."  (Pl.'s SMF ¶ 40.)

LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "A factual dispute is 'material' only if the dispute's resolution might change the

outcome of the suit under the governing law."  *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816,

822 (7th Cir. 2010).  "There is no genuine issue of material fact when no reasonable jury could

find in favor of the nonmoving party."  *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908,

915 (7th Cir. 2007).

When ruling on a motion for summary judgment, the court must consider the facts in the

record before the court in the light most favorable to the nonmoving party, drawing all

reasonable inferences in the nonmoving party's favor.  *McCann v. Iroquois Mem'l Hosp.*, 622

F.3d 745, 752 (7th Cir. 2010).  The court does not make credibility determinations or weigh

conflicting evidence.  *Id.*

ANALYSIS

The primary purpose of the IDEA is "to ensure that all children with disabilities have

available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A).  Parents who

disagree with a local educational agency's "identification, evaluation, or educational placement

of [their] child, or the provision of a free appropriate public education to such child," may

request an impartial due process hearing conducted by the appropriate state educational agency. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A). If parents remain dissatisfied with the outcome of the due process hearing, they may then bring a civil action in federal or state court. 20 U.S.C. § 1415(i)(2)(A).

The IDEA further provides, "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Accordingly, the "IDEA's fee-shifting provision allows an award of reasonable attorneys' fees to the party who prevails in an administrative proceeding as well as an action in court." *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 707 (7th Cir. 2005) (citing *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003)). When adjudicating a claim for attorneys' fees, the court separately addresses whether the plaintiff is a "prevailing party" and whether the claimed fees are "reasonable." *See id.* at 708 ("[i]n some circumstances, even a plaintiff who formally 'prevails'. . . should receive no attorney's fees at all") (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)).

1.    Prevailing Party Status

It is undisputed that Plaintiff was the "prevailing party" at the due process hearing. (Bd.'s Ans. ¶ 93.) That Plaintiff did not obtain all of the relief he requested at the due process hearing does not change this result. *See Linda T.*, 417 F.3d at 708 ("The prevailing party inquiry 'does not turn on the magnitude of relief obtained,' but the size of the fee award does.") (quoting *Farrar*, 506 U.S. at 114). The court analyzes below the reasonableness of Plaintiff's request for fees, insofar as the requested fees are associated with proceedings before the IHO.

On the other hand, the Board argues that Plaintiff was not the prevailing party with respect to his request for injunctive relief before this court. The Board focuses on the fact that "the court did not rule" on Plaintiff's motion for injunctive relief, and asserts that any success on Plaintiff's motion for injunctive relief should be considered *de minimis*. (Bd.'s Resp. 3-4.) Plaintiff takes the position that "prevailing plaintiffs are entitled to fees for post-judgment monitoring." (Pl.'s Reply 2.)

As a general matter, Plaintiff is correct in asserting that "where the plaintiffs must come to district court to enforce the decision of a hearing officer, they are entitled to attorney's fees." (Pl.'s Reply 3 (quoting *Capiello v. Dist. of Columbia*, 779 F. Supp. 1, 1 (D. D.C. 1991)).) This assertion is only true, however, if the district court plaintiff is properly considered a "prevailing party." *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). "[T]o be a 'prevailing party' a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." *T.D.*, 349 F.3d at 478 (citing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001)). A "private settlement agreement between the parties" does not meet this standard. *Id.* at 479.

Only two district court cases cited by the parties address the question of whether a plaintiff can be considered a "prevailing party" for purposes of § 1415(i)(3)(B) when the parties have reached a settlement on the underlying claim. *See C.Z. v. Plainfield Cmty. Unit Sch. Dist. No. 202*, 680 F. Supp. 2d 950, 955 (N.D. Ill. 2010); *Koswenda v. Flossmoor Sch. Dist. No. 161*, 227 F. Supp. 2d 979, 984 (N.D. Ill. 2002). Both cases are in agreement that the answer to this question is "no." *See C.Z.*, 227 F. Supp. 2d at 953 ("'prevailing party' status does not stem from a party's 'voluntary change in conduct,' because a voluntary change 'lacks the necessary judicial

8

*imprimatur*' on the change") (quoting *T.D.*, 349 F.3d at 478); *see also Koswenda*, 227 F. Supp. 2d at 989 ("*Buckhannon* precludes a settlement from conferring prevailing party status on a plaintiff").

This court agrees that Plaintiff cannot be considered a "prevailing party" with respect to his motion for injunctive relief in this court, which was resolved via a private settlement agreement. Accordingly, Plaintiff's request for the $13,775.00 in attorneys' fees associated with Plaintiff's motion for injunctive relief is denied.

2.     Plaintiff's Reasonable Attorneys' Fees Associated with the Due Process Hearing

As stated earlier in this opinion, the parties agree Plaintiff was the prevailing party as to the due process hearing. "After finding that a plaintiff qualifies as a prevailing party under the IDEA, the Court considers the reasonableness of a prevailing party's request for an award." *Ryan M. v. Bd. of Educ. of the City of Chi., Dist. 299*, 731 F. Supp. 2d 776, 788 (N.D. Ill. 2010). The first step in the attorneys' fee determination is to calculate the "lodestar" figure, representing "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Id.* Where the party seeking the fee award has not met this burden, the court must exclude any unreasonable fees from the lodestar calculation. *Id.* "The Court may then adjust that figure based on the factors set forth in *Hensley*, such as the time and labor required, the novelty or difficulty of the case, the degree of success achieved, the experience and ability of the attorneys, and whether appropriate billing judgment was used." *Ryan M.*, 731 F. Supp. 2d at 788; *see also Anderson v.*

*AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (recognizing *Hensley*'s acknowledgment that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.").  "The Supreme Court has said that 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Linda T.*, 417 F.3d at 708.  Finally, the IDEA instructs courts to reduce the amount of attorneys' fees awarded if the court finds that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding."  20 U.S.C. § 1415(i)(3)(F)(iii).

The Board does not dispute the reasonableness of the billing rates claimed by Plaintiff in this case— $350/hour for managing attorney Olga Pribyl and $200/hour for staff attorney Margaret Wakelin.  (Pl.'s SMF ¶ 42; *see also* Dkt. No. 20 ("Local R. 54.3(e) Joint Stmt.") ¶ 2.) Likewise, there is no disputed question of fact regarding Plaintiff's claim that his attorneys actually performed the hours of work attributed to each of them, and the Board has not objected to $3,200.25 of Plaintiff's requested fees.[3]  The dispute in this case centers around Plaintiff's ability to recover for specific work performed by his attorneys, insofar as the Board argues that these hours are not appropriately claimed under the relevant statute.  (Local R. 54.3(e) Joint Stmt. ¶ 3.)  The court will address each area of contention separately below.

A.    Pre-Hearing Motions

The Board first argues that Plaintiff should not be awarded $8,390.00 in attorneys' fees for time spent drafting two pre-hearing motions that were ultimately denied by the IHO.  As a

---

[3] Plaintiff requested "$139,045.00, less the $85,979.75 that Defendants have paid" (Pl.'s Mem. 2), which equals $53,065.25.  The Board's objections amount to only $49,865.00 in total, for a difference of $3,200.25.

general matter, a prevailing party cannot recover attorneys' fees for "work on an unsuccessful claim" that is "based on different facts and legal theories" than the claim on which the party prevailed. *Hensley*, 461 U.S. at 435. On the other hand, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

Plaintiff's motion to compel in the administrative proceeding sought permission "to allow classroom observation as part of the student's independent educational evaluation." (Bd.'s SMF ¶ 6; *see also* Pl.'s Ex. Q ("5/4/2009 Order") at 1.) The IHO denied Plaintiff's motion, finding no statutory or regulatory mandate requiring the requested relief, and further declining to exercise her discretion in Plaintiff's favor. (5/4/2009 Order 6.)

Plaintiff's motion to shift the burden of persuasion was based on an alleged "informational advantage," insofar as the School District had not produced certain relevant documents to Plaintiff in advance of the due process hearing. (Bd.'s Ex. D ("4/10/2009 Order") at 2-3.) Plaintiff contends that, while the motion to shift the burden was ultimately denied, "as a result of filing the motion, Plaintiff was able to obtain the educational records and information that the District had previously denied and [which] motivated the motion." (Pl.'s Mem. 9.) The Board does not dispute Plaintiff's assertion on this point, and the IHO's April 10, 2009 order makes clear that a number of relevant documents were only made available to Plaintiff after the filing of his motion, including "written confirmation of the proposed placement" and the rolling production of "additional assessment protocols." (4/10/2009 Order 3.) By the time of the IHO's April 10, 2009 order denying Plaintiff's motion, the IHO found that "we do not have a situation

where the parent's [sic] have been denied access to the student's educational records,"
distinguishing the case of *Vineland City Board of Education*, 108 LRP 7351 (OAL NJ 2008),
which had been cited by Plaintiff. (Dkt. No. 32 ("Pl.'s Resp. to Bd.'s SMF") ¶ 5.) Ultimately,
the IHO denied Plaintiff's motion to shift the burden of persuasion based on statutory laws,
implementing regulations, and relevant case law. (*Id.*)

   The Board argues that these two motions were "not related to any claim upon which
plaintiffs prevailed." (Bd.'s Resp. 5.) This court disagrees and finds that these motions were
"intermediate, procedural request[s] aimed at gaining evidence to achieve the ultimate goal of
amending [Plaintiff's] IEP." *Ryan M.*, 731 F. Supp. 2d at 789. As in *Ryan M.*, the motions were
"more analogous to a non-dispositive discovery or pretrial motion than a separate, unrelated
claim based on a different legal theory." *Id.* The court also disagrees with the Board that
Plaintiff's motions "had absolutely no basis in law." (Bd.'s Resp. 5.) While Plaintiff did not
prevail on his pre-hearing motions, each of the motions cited relevant authority supporting
Plaintiff's position. The work performed by Plaintiff's attorneys in drafting Plaintiff's motion to
compel and motion to shift the burden of proof was reasonable and was the type of appropriate
legal work in which an attorney should engage to properly represent the attorney's client and to
ensure that the client's rights under the law are fully protected. Plaintiff's request for $8,390.00
in associated fees is therefore granted.

   B.   Non-Legal Work

   The Board also argues that Plaintiff should not be awarded attorneys' fees for "clerical
work," such as time expended in requesting a billing compilation or "revis[ing] a witness list
with updated addresses and phone numbers." (Bd.'s Resp. 9.) It is the Board's position that 9.3

hours claimed by Plaintiff should be billed at a lower rate of $75.00/hour in light of the clerical nature of the work involved, for a total reduction from $1,875.00 to $697.50.  (*Id.* at 10.)

Plaintiff has agreed to reduce his request to $75/hour for 2.0 hours spent revising witness lists and compiling and preparing documents for the due process hearing.  (Pl.'s Reply 10-11.) Plaintiff asserts that "the remaining tasks are activities involving 'decision-making that non-legal staff is "not qualified to make."'"  (*Id.* at 11 (quoting *Garcia v. R.J.B. Props., Inc.*, No. 06 C 4994, 2010 WL 2836749, at *5 (N.D. Ill. July 19, 2010).)  These remaining tasks include document review in preparation for the due process hearing (3.3 hours at $200/hour), preparing a fee request with a detailed billing statement (2.9 hours at $200/hour), compiling expenses and creating a document reflecting this compilation (1 hour at $200/hour), and requesting a billing compilation via email (0.1 hour at $350/hour).  (Bd.'s App'x 5.)

The Seventh Circuit takes the position that courts should not allow the recovery of attorneys' fees for "those hours expended by counsel on tasks that are easily delegable to non-professional assistance."  *Spegon*, 175 F.3d at 553 (internal quotation omitted)).  This court agrees with Plaintiff that, in light of their general complexity and overall importance to litigation, document review and the compilation of financial data for purposes of a fee request are activities appropriately considered "legal work."  Moreover, the descriptions of these activities in the Plaintiff's billing summary are sufficiently specific to allow this court to conclude that the activities logged on April 27, 2009, January 7, 2010, and January 11, 2010 were, in fact, legal in nature.  On the other hand, the 0.1 hour spent "[sending] email with request for billing compilation" does not appear to be a non-delegable activity on its face.  (Bd.'s App'x 5.) Accordingly, the court finds a reasonable rate for this activity to be $75/hour, not $350/hour.

In summary, the court finds that 2.1 hours requested by Plaintiff are reasonably and appropriately billed at $75/hour and 7.2 hours requested by Plaintiff are reasonably and appropriately billed at $200/hour, for a total of $1,597.50.

C.      Attendance at Due Process Hearing

The Board next argues that Plaintiff erroneously billed for ten hours of attendance at the due process hearing on September 21, 2009, when the hearing actually lasted only eight hours that day.  It is undisputed that the court reporter in attendance at the due process hearing billed only eight hours on September 21, 2009.  (Bd.'s Ex. E.)  In a sworn affidavit, Ms. Pribyl attests that she and Ms. Wakelin arrived for the hearing at approximately 8:00 a.m. on September 21, 2009, and began preparing for the hearing, that the hearing started sometime after 9:00 a.m., that she and Ms. Pribyl took a working lunch during a break in the hearing, and that the hearing lasted until approximately 6:50 p.m. that day.  (*See* Pl.'s Ex. R.)

Viewing this evidence in the light most favorable to the Board, the court finds a genuine dispute of fact regarding the duration of the hearing on September 21, 2009.  This dispute is not material, however, when viewed in context with the overall number of hours claimed for counsel's participation in the due process hearing.  Specifically, on September 22, 2009, Plaintiff's counsel only claimed 8 hours of attendance, whereas the court reporter billed for both an eight-hour day *and* 1.5 hours of overtime.  (Bd.'s Resp. 10, n. 4; Bd.'s Ex. E.)  Whether the extra 1.5 hours occurred on September 21 or September 22, 2009 is not material to the question of reasonable attorneys' fees.  The court finds Plaintiff has reasonably requested 1.5 hours in fees for extra hours of attendance at the due process hearing, in the amount of $825.00.

D.      Vague Billing Entries

The Board argues "[t]here are five entries in which the description of the purported attorneys' work is too vague to determine if the work done was in relation to or reasonably necessary for the underlying due process hearing." (Bd.'s Resp. 11.) It is the Board's position that billing entries for 0.2 hour billed at $200/hour and 0.4 hour billed at $350/hour fall into this category, for a total of $180.00. (*Id.*)

In *Hensley*, the Supreme Court instructed attorneys to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," including "the general subject matter of [the attorney's] time expenditures." *Hensley*, 461 U.S. at 437, n.12. Attorneys need not "record in great detail how each minute of [their] time was expended." *Id.*

In this case, at least three of the disputed time entries clearly identify the subject matter to which they pertain, including a "second email to hearing officer" (0.1 hour), "obtain[ing] needed info for fee petition" (0.2 hour) and "update on ISBE action/CPS noncompliance" (0.1 hour). (Bd.'s Resp. at 11.) These three entries are also clearly relate to the claims at issue in this litigation. Accordingly, Plaintiff is entitled to fees for 0.1 hour billed at $200/hour and 0.3 hour billed at $350/hour, for a total of $125.

Two other entries disputed by the Board are not as clear. On May 6, 2009, Ms. Pribyl billed 0.1 hour to "advise of what to look into with email." (Bd.'s Resp. at 11.) On November 13, 2009, Ms. Wakelin billed 0.1 hour for "read[ing] through notes of meeting." (*Id.*) In *Berberena v. Coler*, the Seventh Circuit agreed with the district court that certain entries, "although vague when read in isolation, are not impermissibly vague when viewed in the context of the surrounding documentation." *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cri. 1985). The court then applied this reasoning to the plaintiff's billing records, stating,

> For example, the entry listed as "notes of meeting" follows an entry for the same date identifying a three-hour meeting to discuss settlement with opposing counsel. The challenged entry obviously refers to the memorializing of the three-hour meeting.

*Id.* Relying on *Berberena*, Plaintiff argues that, "[b]y examining surrounding entries, the disputed entries provide clear information regarding the work." (Pl.'s Reply 13.)

The court finds that the subject matter of the May 6, 2009 entry becomes clear when read in context. On May 4, 2009, the IHO denied Plaintiff's motion to compel, as discussed above. The next day, Ms. Wakelin reviewed the IHO's decision (1.1 hours) and drafted an "email regarding decision on motion for observation" (0.3 hour). (Pl.'s Ex. M ("Pl.'s Billing") at 23.) On May 6, 2009, Ms. Wakelin and Ms. Pribyl together discussed the IHO's decision "and how to respond" (0.5 hour). (*Id.*) This entry is followed by a separate entry in which Ms. Pribyl "advise[d] of what to look into with email" (0.1 hour). (*Id.*) In context, this entry clearly refers to a follow-up conversation regarding Ms. Wakelin's "email regarding decision on motion for observation." (*Id.*) Accordingly, Plaintiff is entitled to reasonable fees for 0.1 hour billed at $350 per hour, for a total of $35 for the disputed time entry.

Similarly, on November 13, 2009, Ms. Wakelin billed 0.1 hour for "read[ing] through notes of meeting." (Pl.'s Billing 58.) In light of the IEP meeting held on November 12, 2009, it is clear this entry refers to Ms. Wakelin's notes from the November 12, 2009 meeting. Accordingly, Plaintiff is entitled to reasonable fees for 0.1 hour billed at $200 per hour, for a total of $20 for the disputed time entry.

E.    Meetings and Conferences Between Plaintiff's Attorneys / Duplicative Work

As an overall matter, the Board argues that "[t]he total amount billed for the

conversations between and among attorneys and Equip for Equality[4] staff is excessive," having

the effect of "inflat[ing] the fee request to an unreasonable level."  (Bd.'s Resp. 8.)  Relying on

the IDEA's instruction to courts to reduce fees if "the time spent and legal services furnished

were excessive considering the nature of the action or proceeding," 20 U.S.C. §

1415(i)(3)(F)(iii), the Board argues that "the amount billed for the conversations between and

among attorneys and Equip for Equality staff should be reduced by 50%," from $19,885.00 to

$9,942.50.  (Bd.'s Resp. 8.)  The Board does not, however, specifically address the "nature of

[Plaintiff's] action or proceeding" in asserting this argument.

     In the alternative, the Board "takes issue" with specific entries "for meetings and

conferences by multiple attorneys," totaling 19.6 hours, and seeks a reduction of $6,860.00 for

the hours logged by the second, more senior attorney.  (*Id.* at 8-9)  The Board argues that these

entries do not make clear "whether both attorneys were active participants in the meeting or

conference or if a senior attorney was merely giving direction to a junior attorney."  (*Id.* at 9.)

The Board also argues that the Plaintiff's billing entries are inconsistent, insofar as some

meetings and conferences only bill for the time of one attorney while other entries bill for both

attorneys.  (*Id.*)

     The court finds Plaintiff has not billed excessively for consultation between his attorneys.

In a complex and fact-intensive case, such as this one, it is reasonable for Plaintiff to employ

more than one attorney.  As Plaintiff notes, "[t]he case involved as many as ten status

teleconferences, . . . three pre-hearing motions and one closing brief regarding issues for the

---

[4] Plaintiffs attorneys, Ms. Pribyl and Ms. Wakelin, are employed in the Special Education
Clinic at Equip for Equality, a private, non-profit organization that serves as the governor-
designated Protection & Advocacy agency for the state of Illinois.  (Pl.'s Mem. 6.)

hearing." (Pl.'s Mem. 8.) The four-day due process hearing also "included testimony from twelve witnesses." (*Id.* at 12.) Under these circumstances, the court finds that the 19.6 hours logged by Plaintiff's attorneys for time spent consulting on the case are not excessive.

Moreover, it can be reasonable and appropriate to bill for both attorneys' time when "a senior attorney . . . guide[s] and advise[s] a junior attorney." *Reed v. Astrue*, No. 08-C-5604, 2010 WL 669619, at *3 (N.D. Ill. Feb. 19, 2010) (collecting cases). In *Williams v. R.W. Cannon, Inc.*, cited by the Board, the court noted that "time spent in attorney conferences is generally compensable for each participant since it is necessary for the attorneys to spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case in managed in an effective as well as efficient manner." *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009) (internal alterations and citations omitted). The billing records in this case reflect that Plaintiff's attorneys consulted with respect to significant events in the prosecution of this case, including preparation for pre-hearing conferences, the drafting of pre-hearing motions, and preparation for the due process hearing. As discussed above, consultation under these circumstances is reasonable.

Additionally, the court finds no inconsistencies with Plaintiff's billing entries on April 3, 2009, and September 21, 2009, as argued by the Board. (*See* Bd.'s Ex. H at 13, 48.) To the extent the January 28, 2010 billing entries are inconsistent (*id.* at 64-65), this inconsistency reflects Plaintiff's decision to "no charge" Ms. Pribyl's fee for consulting with Ms. Wakelin, a decision that inures to the benefit of the Board. In fact, Plaintiff has voluntarily "no-charged" the time of two additional attorneys who contributed a significant number of hours to Plaintiff's case, Debra Wysong and Rachel Shapiro. (*See generally*, Pl.'s Billing.) This prudent exercise of

18

billing judgment further supports the reasonableness of Plaintiff's pending request for $19,885.00 in fees for meetings between Ms. Pribyl and Ms. Wakelin, which is granted.

On a related note, the Board argues that certain of Plaintiff's billing entries are duplicative, insofar as Ms. Pribyl and Ms. Wakelin performed the same work on different days. Specifically, on September 20, 2009, Ms. Pribyl billed 8 hours for "review[ing] and revis[ing] [Ms. Wakelin's] draft witness questions for Paul Abraham, Shawnee Newsome, Jason John, James Cohn, Michelle Washington, Karyn Keenan, Marla Cocalis, Tammy Savaiano and Lily Fedniak." (Bd.'s App'x 7.) The next day, on September 21, 2009, Ms. Wakelin billed 0.6 hour for "edit[ing] questions for witnesses . . . Paul Abraham, Karyn Keenan, Shawnee Newsome and Maria Cocalis," while Ms. Pribyl billed 3.1 hours for editing direct examination questions for James Cohn, Jason John, Karen Keenan, and Michelle Washington. (*Id.*)

The court finds these billing entries to be consistent with one another and not duplicative. It appears that Ms. Wakelin drafted witness questions, Ms. Pribyl reviewed the draft questions, and both attorneys divided the work in editing the draft questions to reflect Ms. Pribyl's changes. This division of labor is not duplicative or unreasonable. Similarly, the court finds it reasonable that Ms. Wakelin billed 1.2 hours for "updat[ing] examination questions" for Deborah Margulis and Tammy Savaiano on September 23, 2009, which were then "revised" by Ms. Pribyl on September 24, 2009. (*Id.*) Because these entries are not duplicative and are reasonable steps taken in preparation for the due process hearing, Plaintiff is awarded the $1,365.00 in fees requested for this work.

F.    Lack of Success on the Merits

"After evaluating the individual components of the lodestar amount, the Court considers the overall reasonableness of the requested fee, analyzing the 'relationship between the extent of success and the amount of the fee award.'" *Ryan M.*, 731 F. Supp. 2d at 794 (quoting *Farrar*, 506 U.S. at 115-16).

In this case, the Board argues that Plaintiff's attorneys' fees should be reduced by 5%, because "the hearing officer denied plaintiffs' requested relief that the District be ordered to hire a behavior consultant." (Bd.'s Resp. 12.) In pursing this argument, the Board does not specifically address Plaintiff's requested relief or the relief ordered by the IHO in detail.

In relevant part, Plaintiff requested that the IHO order the School District to "[h]ire a behavioral consultant with expertise with children with autism to observe [Plaintiff] and assist with writing an appropriate behavioral intervention plan" and also to "write an appropriate behavioral intervention plan." (10/21/2009 Order 5.) In her October 21, 2009 order, the IHO specifically denied "Parent's request for District to hire a behavior consultant," but granted the request that the School District be ordered to provide Plaintiff "with [an] appropriate behavioral intervention plan to address his behavior difficulties." (*Id.* at 22-23.) Moreover, the IHO ordered additional, unrequested relief in the form of an evaluation by an occupational therapist "to assess sensory processing and self regulation." (*Id.* at 23.) The IHO ordered this evaluation to include "a functional behavior assessment to assess how [Plaintiff's] sensory processing deficits contribute to his behavior issues." (*Id.*)

The court finds the relief requested by Plaintiff and the relief ordered by the IHO to be functionally equivalent. Because Plaintiff did not experience a "lack of success on the merits," the Board's argument misses its mark and no reduction in fees is appropriate.

G.    Fees with Respect to the Pending Motion

Finally, the Board argues that Plaintiff's request for fees associated with its pending claim for attorneys' fees is premature. Plaintiff appears to agree with the Board on this point, seeking only "permission to petition for additional fees for the current action," (Pl.'s Mem. 14), and noting that he has "not yet requested" any fees associated with the pending motion for summary judgment (Pl.'s Reply 14). Plaintiff is hereby granted leave to petition the court for additional fees related to the pending motion, as set forth below. The parties are strongly encouraged to discuss settlement of this issue in accordance with the procedures set forth in Local Rule 54.3.

To the extent the claimed fees in the amount of $3,295.00 actually relate to "work on the TRO," as Plaintiff contends in his reply brief (Pl.'s Reply 14), the court has already determined that such fees are not appropriately recoverable in this case. Accordingly, Plaintiff's request for $3,295.00 in additional fees is denied.

3.    Prejudgment Interest

The last issue pending before the court is Plaintiff's request for prejudgment interest, "to compensate his attorneys for the time value of money." (Pl.'s Mem. 15.) "[I]t is well-established in this circuit that prejudgment interest is presumptively available to victims of federal law violations." *RK Co. v. See*, 622 F.3d 846, 853 (7th Cir. 2010) (citing *Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). In cases brought under the IDEA, courts have found that the award of prejudgment interest is left to the discretion of the court. *See Ryan M.*, 731 F. Supp. 2d at 795; *Stephanie J. v. Bd. of Educ. of City of Chi., Dist. 299*, No. 10 C 1359, 2010 WL 3070461, at *5 (N.D. Ill. July 30, 2010); *M. v. Bd. of Educ. of*

*City of Chi.*, No. 10 C 2110, 2010 WL 2698285, at *8 (N.D. Ill. July 7, 2010).

The Board argues that Plaintiff is not entitled to prejudgment interest, because he failed to request this relief in his complaint. Pursuant to Federal Rule of Civil Procedure 54(c), however, courts are to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *see also RK Co.*, 622 F.3d at 853-54. Plaintiff's failure to request prejudgment interest in his complaint therefore does not impact this court's consideration of his pending request.

As other judges from this court have noted, "the purpose of prejudgment interest is to compensate for the time value of money." *Ryan M.*, 731 F. Supp. 2d at 795; *see also M.*, 2010 WL 2698285, at *7 ("The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately.") (quoting *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003)). The court finds that prejudgment interest is appropriately awarded in this case.

Plaintiff has requested prejudgment interest from the date of the IHO's October 21, 2009 order, apparently seeking interest on both the $35,442.75 in fees awarded pursuant to this order and the $85,979.75 already paid by the Board. The Board asserts that "[it] would be appropriate to only award prejudgment interest on the amount that was contested by the Board since the filing of the federal complaint" (Bd.'s Resp. at 13), but the Board does not further explain this distinction. In the interest of compensating Plaintiff for the time value of money that was due and owing to his attorneys once he prevailed at the due process hearing, the court finds that prejudgment interest is appropriately calculated based on an October 21, 2009 start date. With respect to the $35,442,75 in attorneys' fees awarded through this memorandum opinion and

order, prejudgment interest is awarded beginning October 21, 2009 and ending March 29, 2011. With respect to the $85,979.75 in attorneys' fees previously-paid by the Board on September 9, 2010 (*see* Bd.'s Resp. 2, n.2), prejudgment interest is awarded beginning October 21, 2009 and ending September 9, 2010.

"Because the IDEA provides no statutory interest rate, the Court uses the average prime rate for the time period to award prejudgment interest." *Ryan M.*, 731 F. Supp. 2d at 796 (citing *First Nat'l Bank of Chi. v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999)). Since October 21, 2009, the prime rate has remained steady at 3.25. *See* http://www.federalreserve.gov/releases/h15/.

<u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's motion for summary judgment (Dkt. No. 26) is granted and judgment is entered in favor of Plaintiff on his claim for attorneys' fees. Attorneys' fees are awarded to Plaintiff in the amount of $35,442.75; prejudgment interest is awarded on this $35,442.75 in attorneys' fees for the time period beginning October 21, 2009 and ending March 29, 2011; and prejudgment interest is awarded on the previously-paid $85,979.75 in attorneys' fees for the time period beginning October 21, 2009 and ending September 9, 2010. In light of the parties' agreed settlement, Plaintiff's "Motion for Temporary Restraining Order and Preliminary Injunction" (Dkt. No. 6) is denied as moot and Plaintiff's § 1983 claim is dismissed with prejudice. Having resolved the merits of Plaintiff's pending claims, this civil case is terminated.

Pursuant to Local Rule 54.3, Plaintiff is granted permission to petition the court for additional fees associated with Plaintiff's motion for summary judgment on or before April 14,

2011.  Defendant Board's objections are due on or before April 28, 2011.  The parties are to comply with the procedural requirements set forth in Local Rule 54.3(d) and are strongly encouraged to consider settlement.



ENTER:


JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   March 29, 2011